IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

LINDA TOMPKINS-WELLS,

    Plaintiff,

vs.                                        No. 12-cv-03035-JTF-dkv

SHELBY COUNTY HEAD START,
AFSCME LOCAL 1733, HAVIER SMITH,
CHAD JOHNSON, and NETRA WEATHERBY

    Defendants.

_____

REPORT AND RECOMMENDATION ON DEFENDANT SHELBY COUNTY HEAD
START'S MOTION FOR SUMMARY JUDGMENT

_____

The plaintiff, Linda Tompkins-Wells ("Tompkins-Wells"),
proceeding *pro se*, filed a complaint on November 30, 2012,
alleging that the defendant, Shelby County Head Start ("SCHS"),
terminated her employment on the basis of a physical disability
in violation of the Americans with Disabilities Act of 1990
("ADA"), 42 U.S.C. § 12101 *et seq.*[1] (*Pro Se* Compl., ECF No. 1.)
In the complaint, she seeks the following relief: "Defendant be
directed to make plaintiff whole and accommodate." (*Id.* at 3.)

_____

    1  Tompkins-Wells used the court-provided form, "Complaint
under Title VII of the Civil Rights Act of 1964," to initiate
this case against SCHS; however, Title VII does not provide a
cause of action for discrimination on the basis of a disability.
Therefore, the court shall treat Tompkins-Wells's complaint as
alleging a claim for discrimination and wrongful termination in
violation of the ADA.

On December 5, 2012, the court issued an order granting Tompkins-Wells leave to proceed *in forma pauperis*. (ECF No. 3.)

Tompkins-Wells subsequently filed a motion to join the American Federation of State County and Municipal Employees Union Local 1733 and International ("AFSCME") as a defendant, (ECF No. 20), and a motion for leave to amend her complaint to state a claim against the AFSCME, (ECF No. 19). The court granted Tompkins-Wells's motions, (ECF No. 24), and on March 28, 2014, Tompkins-Wells filed an amended complaint naming AFSCME as a defendant,[2] (ECF No. 31). In her amended complaint, Tompkins-Wells seeks compensatory damages in the amount of $950,000 and punitive damages in the amount of $3,000,000. (*Id.*)

Now before the court is the April 10, 2014 motion for summary judgment filed by SCHS. (Def.'s Mot. for Summ. J., ECF No. 27.) Tompkins-Wells initially filed a one-page "motion in Opposition to Summary Judgement (sic)" in which she requested "additional time for preparation of this claim." (ECF No. 29.) By text order on May, 20, 2014, the court granted Tompkins-Wells additional time until June 23, 2014, to file an amended response to the motion. On June 20, 2014, Tompkins-Wells filed a one-page supplemental response to SCHS's motion for summary judgment with fifteen exhibits attached. (Pl.'s Resp., ECF No. 38.) In

---

2 AFSCME has filed a motion to dismiss which is the subject of a separate Report and Recommendation.

her supplemental response, Tompkins-Wells seeks reinstatement to her job position with SCHS or an alternative position with Shelby County, restoration of benefits, and compensatory and punitive damages in the amount of $1,500,000. On July 2, 2104, SCHS filed reply in which it raised evidentiary objections to many of the exhibits proffered by Tompkins-Wells in her response. (ECF No. 39.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.) For the reasons set forth below, it is recommended that SCHS's motion for summary judgment be granted and that Tompkins-Wells's complaint be dismissed in full as to SCHS.

## I.   PROPOSED FINDINGS OF FACTS

Under Rule 56(c)(1) of the Federal Rules of Civil Procedure, when moving for summary judgment, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  In response to the motion, if a party

fails to properly address another party's assertion of
fact as required by Rule 56(c), the court may:

> (1) give an opportunity to properly support or
> address the fact;
>
> (2) consider the fact undisputed for purposes of
> the motion;
>
> (3) grant summary judgment if the motion and
> supporting materials—including the facts
> considered undisputed—show that the movant
> is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

Tompkins-Wells's response to SCHS's motion for summary

judgment fails to properly address SCHS's assertions of

undisputed facts.  In her response to SCHS's motion for summary

judgment, Tompkins-Wells failed to individually and specifically

address the facts asserted by SCHS, and instead simply attached

a number of exhibits, without providing any explanation as to

how the documents are relevant to the inquiry at hand or

admissible under the Federal Rules of Evidence.

More specifically, Tompkins-Wells has not complied with

Local Rule 56.1(b), which provides that the opponent of a motion

for summary judgment "must respond to each fact set forth by the

movant" and "the response must be made on the document provided

by the movant or another document in which the [opponent] has

reproduced the facts and citations verbatim as set forth by the

movant." Either way, according to the Local Rule, "the [opponent] must make [its] response to each fact set forth by the movant immediately below each fact set forth by the movant." Tompkins-Wells has failed to do so. In addition, Tompkins-Wells has not demonstrated that any of SCHS's facts are genuinely disputed by citing to the record, affidavits, deposition testimony, or admissible testimony. The court, therefore, considers the proposed factual findings as presented by SCHS to be undisputed to the extent they are properly supported by evidence in the record. Fed. R. Civ. P. 56(e)(3).

Thus, the following facts are undisputed for purposes of this summary judgment motion:

Tompkins-Wells began working for SCHS as a teacher's assistant in 1993. (Def.'s Statement of Undisputed Facts ¶ 1, ECF No. 27-1.) In 1998, she was promoted to the position of teacher. (*Id.* at ¶ 2.) She continued to work for SCHS in this capacity until 2011, when she was terminated. (*Id.* at ¶ 3.)

As part of her duties as both a teacher's assistant and a teacher, Tompkins-Wells was required to assess children, engage with them during meal times for the purpose of teaching them about nutrition, perform health checks on the children, and provide individualized attention and instruction to each child. (Id. at ¶ 4.) The "Essential Functions" of the position of a classroom teacher for SCHS are set forth in the job description

for the position of "Shelby County Head Start Classroom Teacher." (Def.'s Mot. for Summ. J., Ex. 1, ECF No. 27-4.) The "Essential Functions" of the position of classroom teacher set forth in the job description include, *inter alia*, "serves meals, eats with enrollees, and provide classroom food experiences as outlined in the Nutrition plan." (*Id.*) In 2008, when Tompkins-Wells first became a teacher, the job position of teacher required that she have the ability to lift up to seventy-five pounds. (*Id.* at 2.) In 2009, the job description was updated to require that the teacher have the ability to lift up to forty pounds. (Def.'s Statement of Undisputed Facts ¶ 7, ECF No. 27-1.) Interactions between the children and the teacher require the teacher to engage with the students at their level, which typically involves sitting on the floor or in the smaller chairs in which the preschool aged students sit, and may involve lifting or other physical activity. (*Id.* at ¶¶ 6, 22, 23.) In her deposition testimony, Tompkins-Wells admitted that the essential functions of her job as a SCHS Classroom Teacher required her to be able to get down on the level of the children she was educating in order to communicate and interact with them. (*Id.* at ¶¶ 6, 23.) For the entirety of her term of employment as a teacher, Tompkins-Wells was responsible for the instruction and supervision of

children ranging in age from three to five years old. (*Id.* at ¶ 8.)

In January of 2010, Tompkins-Wells was injured on the job when she was assisting a child in adjusting her clothes. (*Id.* at ¶¶ 9, 10.) An on-the-job injury report was completed regarding this injury and signed by her supervisor.[3] (Pl.'s Resp., Ex. K at 16, ECF No. 38-1.) Four months after the injury, Tompkins-Wells's physician cleared her to return to work in May of 2010. (Def.'s Statement of Undisputed Facts ¶ 12, ECF No. 27-1.)

In 2011, Tompkins-Wells was re-injured while she was in the process of assessing a child in the classroom. (*Id.* at ¶ 13.) An on-the-job injury report was not completed for this incident. (*Id.* at ¶ 14.)

For both injuries, Tompkins-Wells received treatment from Dr. Samuel Schroerlucke. (*Id.* at ¶ 15.) In a physician's report completed by Dr. Schroerlucke on August 11, 2011, he

---

3   Exhibit K to Tompkins-Wells's response to the motion for summary judgment is an unsworn "Shelby County Risk Management Department Injury/Accident/illness Report" dated January 21, 2010, signed by Sallie Smith "Supervisor." SCHS objects to this exhibit as lacking personal knowledge, not properly authenticated pursuant to Fed. R. Evid. 901, containing inadmissible hearsay under Fed. R. Evid. 802, and containing a medical opinion by a lay witness in violation of Fed. R. Evid. 701, and asks that it be stricken. Because SCHS does not dispute that the report was filled out and the report does not contain a medical opinion, the court will allow it as a business record of SCHS and overrules SCHS's objection to it.

indicated that Tompkins-Wells was not medically cleared to perform four of the six essential functions of a classroom teacher: (1) the ability to lift forty pounds; (2) the ability to move quickly to keep pace with toddlers; (3) the ability to bend at the waist, kneel, or crunch to maintain direct eye contact with toddlers; and (4) the ability to sit on the floor and/or preschool chairs. (Def.'s Mot. for Summ. J., Ex. 6 at 4, ECF No. 27-4.) He also noted in his report that she had a degenerative condition that makes bending, squatting, kneeling, or sitting on the floor exceptionally difficult and affected her ability to care for a group of children. (*Id.*) In a follow-up report dated September 19, 2011, after re-examination, Dr. Schroerlucke noted that her condition was the same and that she was still not able to perform the four essential functions listed above. (Def.'s Mot. for Summ. J., Ex. 7 at 5, ECF No. 27-4.)

Based on the documentation provided by Dr. Schroerlucke, John Lovelace, Shelby County Head Start Director, notified Tompkins-Wells by letter dated September 21, 2011 that she lacked the ability to perform basic core requirements for the position of SCCHS Classroom Teacher, that SCHS could not reasonably accommodate her condition, and that effective Friday,

September 23, 2011, her employment would be terminated.[4]  (Pl.'s
Resp., Ex. N at 20, ECF No. 38-1.)   Lovelace also advised that
SCHS would be "willing to contact Shelby County Human Resources
in order to assist [her] in locating other employment options
within Shelby County that better suit [her] physical abilities,
if such positions are available." (*Id.*)

Finally, in a follow-up report dated October 26, 2011,
after re-examination, Dr. Schroerlucke noted that Tompkins-Wells
still could not lift forty pounds or sit on the floor or in
preschool chairs because of L4-L5 spondylolisthesis and L5-S1
degenerative disc disease and low back pain.  (Def.'s Mot. for
Summ. J., Ex. 8 at 6, ECF No. 27-4.)   In March 2012, Tompkins-
Wells began receiving treatment from Dr. Jeffrey Zsohar.  In a
physician's report completed by Dr. Zsohar, he also indicated
that Tompkins-Wells was not cleared to perform two essential
functions of a SCHS Classroom Teacher, specifically, that she
was not cleared to lift forty pounds or sit on the floor or in
the preschool sized chairs.  (Def.'s Statement of Undisputed
Facts ¶ 20, ECF No. 27-1 & Def.'s Mot. for Summ. J., Ex. 9 at 7,
ECF No. 27-4.)

---

    4  Plaintiff's Exhibit N is John Lovelace's two-page letter
dated September 21, 2011.   SCHS does not object to the
authenticity or admissibility of Exhibit N.   (Def.'s Reply 10,
ECF No. 39.)

Following her termination from her employment with SCHS on September 23, 2011, Tompkins-Wells did not apply for any other position within SCHS. (Def.'s Statement of Undisputed Facts ¶ 24, ECF No. 27-1.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993); *Osborn v. Ashland Cnty. Bd. of Alcohol, Drug Addiction & Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam). The moving party has the burden of showing that there are no genuine issues of material fact at issue in the case. *LaPointe*, 8 F.3d at 378. This may be accomplished by pointing out to the court that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

In response, the non-moving party must go beyond the pleadings and present significant probative evidence to demonstrate that there is more than "some metaphysical doubt as

to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993); *see also LaPointe*, 8 F.3d at 378. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247—48 (1986); *LaPointe*, 8 F.3d at 378.

In deciding a motion for summary judgment, the "[c]ourt must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993)(quoting *Anderson*, 477 U.S. at 251—52). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Patton*, 8 F.3d at 346; *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). However, to defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252; *LaPointe*, 8 F.3d at 378. Finally, a court considering a motion for summary judgment

may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 255; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

B. <u>SCHS's Evidentiary Objections to Tompkins-Wells Proffered Exhibits</u>

SCHS raises a number of evidentiary objections to the exhibits Tompkins-Wells proffers in her response to its motion for summary judgment and moves to strike the inadmissible exhibits from the record. (Def.'s Reply, ECF No. 39.) Tompkins-Wells has not filed a response to the motion.

In opposing a motion for summary judgment, a party must "[cite] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). The opposing party may object that the material cited cannot be presented in a form that would be admissible at trial. Fed. R. Civ. P. 56(c)(1)(B)(2). Although Tompkins-Wells has produced a number of documents in an effort to demonstrate that a genuine issue of material fact exists in the present case, "such evidence must still be admissible at trial." *Worthy v. Mich. Bell Tel., Co.*, 472 F. App'x 342, 343 (6th Cir. 2012).

1. *Unsworn Letters and Correspondence*

Tompkins-Wells's Exhibits B, C, D, F, L, and N consist of unsworn letters or correspondence from various individuals, and as such, each invariably implicates hearsay issues. (Pl.'s Resp. 3-22, ECF No. 38-1.)  In order to serve as competent evidence in opposition to a motion for summary judgment, an affidavit or declaration must either be "sworn to by the affiant in front of an officer authorized to administer oaths," or "made under penalty of perjury, certified as true and correct, dated, and signed." *Worthy*, 472 F. App'x at 343, 344 (citations and internal quotation marks omitted).  Statements that are neither verified under oath, nor signed under penalty of perjury, "lack the force and effect of an affidavit for purposes of responding to a motion for summary judgment." *Zainalian v. Memphis Bd. of Educ.*, 3 F. App'x 429, 431 (6th Cir. 2001).  Accordingly, Exhibits B, C, D, F, L, and N are inadmissible, and SCHS's motion to strike is sustained as to these exhibits.

2. *Notarized Letters*

Tompkins-Wells's Exhibits A, E and G are notarized letters from various individuals.  The authors of all three letters, however, fail to indicate the statements in their letters are based on personal knowledge.  All three letters contain inadmissible hearsay statements pursuant to Fed. R. Evid.  802 and irrelevant information excludable under Fed. R. Evid. 402.

Accordingly, Exhibits A, E and G are inadmissible, and SCHS's motion to strike is sustained as to these exhibits.

   3. *Excerpts from Other Documents*

   Plaintiff's Exhibit H is an unsworn document consisting of a page from a union contract with some county entitled "Article 2 Non-Discrimination." (Pl.'s Resp., Ex. H at 11, ECF No. 38-1.) Plaintiff's Exhibit I is an unsworn document with the second page entitled "Disability Leave." (*Id.* at 12-13.) The source and date of the document excerpts are not identified, and neither of these documents is properly authenticated pursuant to Fed. R. Evid. 901. Accordingly, Exhibits H and I are inadmissible, and SCHS's motion to strike is sustained as to these exhibits.

   4. *EEOC Notice of Right to Sue*

   Plaintiff's Exhibit J is an EEOC Notice of Right to Sue. (*Id.* at 14-15.) In its answer to the complaint, SCHS admitted that "the EEOC issued a Notice of Right to Sue to Charge No. 490-2012-01241 on or about September 11, 2012 and that a copy of the Notice of Rights to Sue is attached to Plaintiff's complaint." (Answer ¶ 8, ECF No. 9.) Plaintiff's Exhibit J is identical to the Notice of Right to Sue which was attached to the complaint. Accordingly, the court finds this exhibit to be admissible, and SCHS's motion to strike Exhibit J is denied.

5.  AFSCME Local 1733–AFL-CIO Grievance Form

Plaintiff's Exhibit M is an ASCME Local 1733–AFL-CIO Grievance Form dated September 30, 2011 signed by Tompkins-Wells. (Pl.'s Resp., Ex. M at 18, ECF No. 38-1.)   It is not properly authenticated and is irrelevant to the issues in SCHS's summary judgment motion. Accordingly, Exhibit M is inadmissible, and SCHS's motion to strike is sustained as to Exhibit M.

6.  Pictures of Child Chairs

Plaintiff's Exhibit O is a two-page unsworn exhibit. (*Id.* at 21–22.)   It consists of a page printed from an Internet site of chairs with a description of a child's chairs and two photographs that are illegible.  This document is not properly authenticated and contains inadmissible hearsay.  Accordingly, Exhibit O is inadmissible, and SCHS's motion to strike is sustained as to Exhibit O.

Therefore, to the extent Tompkins-Wells's response to SCHS's motion for summary judgment consists of inadmissible evidence, SCHS's motions to strike are sustained as to Plaintiff's Exhibits  A, B, C, D, E, F, G, H, I, L, M, and O, and Plaintiff's Exhibits J, K, and N are admissible.

C.  Whether the Amended Complaint Fails to State a Claim Against SCHS

In its Memorandum in Support of Motion for Summary Judgment, SCHS submits that Tompkins-Wells's claims against SCHS

should be dismissed for failure to state a claim, because the amended complaint contains no allegations against SCHS. (Def.'s Mem. in Supp. of Mot. for Summ. J. 2, ECF No. 27-2.)  Pursuant to Federal Rule of Civil Procedure 15, an amended complaint effectively supersedes the original complaint.  The Sixth Circuit "liberally construe[s] pro se complaints and hold[s] such complaints to a less stringent standard than pleadings prepared by attorneys." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012) (citing *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  Consistent with this liberal construction of *pro se* complaints, this court has, in some instances, followed Fifth Circuit precedent and permitted an amended *pro se* complaint to effectively "functio[n] as an addendum to the original complaint." *See Rajapakse v. Memphis Light, Gas and Water Div.*, No. 12-2807-JDT-dkv, 2013 WL 3803979, at *6 (W.D. Tenn. July 19, 2013).  For purposes of evaluating Tompkins-Wells's complaint at the summary judgment stage, her amended complaint shall be regarded as having supplemented, rather than superseded, her original complaint.

D.   Tompkins-Wells's ADA Claim

1.  *Evidentiary Framework for Evaluating Failure to Accommodate Claims*

In the Sixth Circuit, in order to establish a *prima facie* case for failure to accommodate, a plaintiff must show that: (1)

she was disabled; (b) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (c) her employer knew or had reason to know about her disability; (d) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *DiCarlo v. Potter,* 358 F.3d 408, 419 (6th Cir. 2004). To be "otherwise qualified" for the job, the employee bears the burden of showing she can perform the "essential functions" of the job, with or without accommodation. 42 U.S.C. § 12111(8). The employee also bears the burden of proposing reasonable accommodations. *Tubbs v. Formica Corp.*, 107 F. App'x 485, 488 (6th Cir. 2004).

The first element of a *prima facie* case, under which a plaintiff must demonstrate that she is disabled, is not in dispute here. Tompkins-Wells's treating physician independently determined that Tompkins-Wells could not be ultimately cleared for two essential functions of her job — specifically, that she was not cleared to lift forty pounds or sit on the floor or in the preschool sized chairs. It was in reliance on his assessments that Tompkins-Wells originally sought accommodations from SCHS. (*Pro Se* Compl. 3, ECF No. 1.)

The second element, requiring a plaintiff to demonstrate that she is otherwise qualified for the position in question, is more problematic for Tompkins-Wells. Because Tompkins-Wells does not dispute that the two functions she is unable to perform

are essential to the classroom teacher position with SCHS, she "must demonstrate that she could have performed her essential job duties with a reasonable accommodation." *Kempter v. Mich. Bell Tel. Co.*, 534 F. App'x 487, 491 (2013). In order to satisfy this element of the *prima facie* case, and thereby shift the burden to the employer to prove that the accommodation requested would be unduly burdensome, "the plaintiff must propose an accommodation that is objectively reasonable to employers in general." *Id.* (citations omitted).

In her original complaint, Tompkins-Wells alleges she requested accommodations not to lift forty pounds and to be allowed to sit in an adult chair, not a child's chair. SCHS argues that neither of these accommodations was reasonable for a pre-school teacher. In essence, she requested that SCHS waive the requirement of being able to lift up to forty pounds.

In a similar case, the Sixth Circuit upheld a teacher's termination because she was unable to perform essential functions of her job after suffering injuries in an automobile accident. *Johnson v. Cleveland City Schl. Dist.*, 443 F. App'x 974, 988 (6th Cir. 2011). Two different doctors submitted letters indicating that Johnson's impairments prevented her from "verbally control[ling] resistive students" or "verbally control[ling] resistant behavior in students that persists after an initial warning." *Id.* at 985 (internal quotation marks

omitted).  Johnson admitted that the ability to discipline students was an essential function of a teacher.  The Sixth Circuit held that "because Johnson's doctors indicated that she was unable to safely and effectively 'verbally control' students, she was not 'qualified for the position, with or without reasonable accommodations.'"  *Id.* at 988 (quoting *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)).  The court concluded that "[t]he District was left no choice but to fire her, as she was unable to do the job."  *Id.* In sum, the court found no set of reasonable accommodations could allow Johnson to perform a job as a teacher instructing students.  *Id.*

The essential functions of a classroom teacher in the Head Start preschool program require that a teacher be able to lift a young child in the case of an injury, fire, or other emergency, such as to clear a child's obstructed airway or to prevent a child from walking in front of a car.  In addition, to perform the duties of a preschool classroom teacher, it is essential that the teacher be able to sit at the level of the children or on the floor to instruct the children.  The children cannot sit in adult size chairs for physical and safety reasons.  Tompkins-Wells does not dispute these essential functions.  As SCHS points out, it is their responsibility to ensure that the staff in the Head Start program do everything they can to prevent

injury, to minimize the risk of harm to the children, and to provide proper methods of guidance to children. Tompkins-Wells's inability to perform the basic core requirement of lifting up to forty pounds increases the risk of harm to the children enrolled in the Head Start Program. In short, because of her physical limitations, Tompkins-Wells could not perform the essential functions of her job and could not perform them with the accommodations she requested. Thus, Tompkins-Wells has failed to carry her burden to demonstrate that she can perform her fundamental job duties with or without an accommodation.

In the alternative, Tompkins-Wells requested an accommodation in the form of reassignment to a different position. However, "[t]he ADA does not require employers to create a new position for a disabled employee who can no longer perform the essential functions of his job." *Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir. 1997). Nevertheless, Tompkins-Wells did not apply for any other positions with Shelby County, and she has not come forth with any evidence that a suitable alternative position was open at the time.

As Tompkins-Wells has not demonstrated that the second element is satisfied, it is unnecessary to consider whether SCHS's reason for terminating her was pretextual. Tompkins-Wells has not made a *prima facie* showing of discrimination under

the ADA.  The court recommends that SCHS's motion for summary judgment be granted.

E.    Punitive Damages in ADA Cases

It is unclear whether Tompkins-Wells seeks punitive damages against SCHS.  In her original complaint against SCHS, she did not.  In her amended complaint against AFSCME, which the court treats as a supplement, she includes no factual allegations against SCHS, but she does seek $3,000,000 in punitive damages. In her opposition to SCHS's motion for summary judgment, Tompkins-Wells seeks $1,500,000 in punitive damages.

Regardless of whether Tompkins-Wells has properly made a claim for punitive damages, she would not be entitled to recover punitive damages against SCHS.  The statutory provisions for relief under the ADA specifically provide that "[a] complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision)."   42  U.S.C.  §  1981a(b)(1).   In construing this statute, "courts in this circuit have concluded that punitive damages may not be recovered from a governmental entity." *Labarre v. Memphis Light, Gas & Water Div*., No. 04-2401 B, 2006 WL 485086, at *1 (W.D. Tenn. Feb. 28, 2006) (citing *Poe v. Memphis Light, Gas and Water Div*., No. 98-5942, 1999 WL 1204694, at *3 (6th Cir. Nov. 30, 1999)).  SCHS, which is an entity created by the Shelby County Community Services division,

is considered a government entity for purposes of the ADA, and is therefore exempt from punitive damages. Accordingly, it is recommended, at a minimum, that to the extent Tompkins-Wells claims seeks punitive damages from SCHS, her claim be stricken.

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that SCHS's motion for summary judgment be granted and that Tompkins-Wells's complaint as to SCHS be dismissed in full.

Respectfully submitted this 14th day of August, 2014.

S/ Diane K. Vescovo
Diane K. Vescovo
United States Magistrate Judge


## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.